UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEA MOQUETE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

GNC HOLDINGS, LLC, a Foreign Limited Liability Company, and DOES 1-10, inclusive,

Defendants.

CASE NO. CV24-05393 BHS

ORDER

THIS MATTER is before the Court on defendant GNC Holdings, LLC's motion to deny class certification, Dkt. 27.

This is a putative wage transparency class action. Plaintiff Lea Moquete alleges that GNC violated Washington's Equal Pay and Opportunities Act (EPOA), RCW 49.58.110, by failing to include wage scale and benefits information in two job postings for its Tacoma Mall store. She seeks to represent a class of individuals who applied for part-time sales associate and store manager positions at GNC's Tacoma Mall store from

ORDER - 1

2023 to the present. GNC preemptively seeks an order denying class certification, alleging the class is not certifiable under Rule 23.

## I.   BACKGROUND

In September 2023, Moquete visited GNC's Joint Base Lewis-McChord (JBLM) store as a customer. Dkt. 28-1 at 10. The GNC JBLM store manager informed Moquete that GNC was hiring a part-time sales associate at its Tacoma Mall location and encouraged her to apply. She applied for the position through a job posting on GNC's website and was hired. *Id.* GNC's district manager for Western Washington, Bridgette Duscha, asserts the part-time sales associate job posting is "an evergreen requisition, meaning it is always posted, regardless of whether there is an opening at the Tacoma Mall. It does not get taken down when a position is filled and republished when a position opens." Dkt. 29 at 2.

Two months later, a store manager position at the store opened. Moquete "expressed interest in the role." Dkt. 29 at 2. Duscha "wanted to promote her" and "received approval" to hire her for the position. *Id.* at 3. After Moquete "had already been approved and had the job," Duscha asked her to apply to the store manager position on the website "for the sole purpose of completing . . . the administrative side in GNC's tracking system." *Id.* Moquete did so.

Moquete claims GNC failed to disclose wage and benefits information on its online job postings as required by RCW 49.58.110. Dkt. 9. She proposes class certification under Federal Rule of Civil Procedure 23(b)(3). Although her original class definition encompassed job postings for GNC positions across Washington state, Dkt. 9

ORDER - 2

at 4–5, for purposes of this motion, she now limits the putative class to "statewide . . . applicants" from 2023 through the present for the part-time sales associate and store manager positions at the Tacoma Mall location. Dkt. 30 at 8, 18–19.

GNC moves to deny class certification, arguing Moquete cannot meet Rule 23(a) and (b)(3)'s commonality, typicality, adequate representation, predominance, and superiority requirements. Dkt. 27. It argues Moquete's claims are individualized because she applied for both positions under unique circumstances. *Id.* at 13. It does not dispute numerosity at this stage. *Id.* at 15 n.4.

Moquete responds that even limited discovery of 170 Tacoma GNC job applicants demonstrates this case meets Rule 23's requirements. Dkt. 30 at 2. She argues the Washington Supreme Court's decision in *Branson* has significantly changed the EPOA landscape. *Id.* at 3 (citing *Branson v. Wash. Fine Wine & Spirits, LLC*, 5 Wn.3d 289 (2025)).

The issues are addressed in turn.

## II.  DISCUSSION

A party seeking to certify a class must demonstrate that it has met all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. It must also demonstrate its action is permitted under Rule 23(b), which provides for the maintenance of several different types of class actions. Relevant here, Rule 23(b)(3) allows class actions where common questions of law or fact predominate over individual issues such that a class action would be the superior way to adjudicate the controversy.

ORDER - 3

A defendant may bring a preemptive motion to deny class certification, before the plaintiff itself seeks certification. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009).

### A.    Rule 23(a)

Under Rule 23(a), members of a class may sue or be sued as representative parties only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Additionally, the class must be ascertainable, meaning the class definition is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 410 (N.D. Cal. 2013) (citation modified); *see In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 563 (N.D. Cal. 2013) (Rule 23(a) implies that the class must be ascertainable).

**1.    Moquete's contention that GNC failed to disclose wage and benefits information on the job postings is common to the class's claims.**

To satisfy Rule 23(a)'s "common question of law or fact" requirement, the plaintiffs' claims must "depend upon a common contention" that is "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This means that determining the truth or falsity of the contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. The key question is whether a

"classwide proceeding [will] generate common answers apt to drive the resolution of the litigation." *Id*. The commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Indeed, it "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (*overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022)).

GNC argues Moquete cannot satisfy commonality because her claims are "riddled with individual issues requiring mini-trials," thus "incapable of generating common answers." Dkt. 27 at 22. It contends the "evergreen" nature of the part-time sales position results in "no common method to determine whether a specific available position existed at the time of application." *Id.*

Moquete responds that there is a class-wide question applicable here: whether GNC violated the EPOA by failing to include wage and benefits information on the job postings for the Tacoma part-time sales associate and store manager positions to which the putative class members applied. Dkt. 30 at 15. She asserts "at least one state court in Washington [has] certified an EPOA case as a class action." *Id.* at 16 (citing *Pizl v. C.J. of Washington, Inc*, No. 23-2-11204-6 (Pierce Cnty. Sup. Ct. 2024)).

The Court agrees with Moquete on this point. Central to every putative class member's claim is the contention that GNC did not include the required wage and benefits information in its job postings. That Moquete applied to the positions in unique circumstances and that the part-time position may not have been open for every applicant are individual issues that go to predominance under Rule 23(b)(3), rather commonality

under Rule 23(a)(2). *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 297 F.R.D. 590, 602 (C.D. Cal. 2012) (sufficient similarities among the claims establishes commonality, and predominance of common issues over individualized ones is a separate issue under Rule 23(b)(3)).

**2.     Moquete's claim regarding the store manager position are unique to her and thus atypical of the class's. Her claim regarding the sales associate position is subject to further discovery.**

"[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. This requirement "ensures that 'the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Gold v. Midland Credit Management, Inc.*, 306 F.R.D. 623, 631 (N.D. Cal. 2014) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n. 13 (1982)). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Courts consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*

GNC argues Moquete's claims are atypical for the same reasons it argues they are not common to the class. Dkt. 27 at 22–23. It further highlights "there is no allegation that other class members" applied to the postings after in-person networking, as Moquete had. *Id.* at 24.

Moquete argues that, like all the putative class members, she applied online for the positions through job postings that did not disclose the compensation. Dkt. 30 at 18–19. She contends her actions prior to applying online have no bearing on the typicality of her claims because under *Branson*, "nothing more is required to establish standing to pursue EPOA claims." *Id.* at 19.

Moquete's claim as to the store manager position is not typical. She completed an employment application for the store manager position as a formality, part of an administrative process required after she was already offered and approved for the role. Any injury she suffered as a result of GNC's alleged failure to include the wage and benefits information on the posting is unique to her because she was an existing GNC employee, given a promotion before she filled out the application form for it. The circumstances in which she applied to the store manager posting is not reasonably co-extensive with those of the putative class.

Moquete's claim regarding the part-time sales associate position is likely typical, although it requires further discovery. The "evergreen" nature of the posting means some putative class members possibly applied to the job when it was not open. Those applicants' claims are not actionable under the EPOA. The statute defines a job "posting" as a "solicitation intended to recruit job applicants for a specific *available* position." RCW 49.58.110(1)(a) (emphasis added). Although *Branson* held a "person's subjective intent in applying for the specific position" is irrelevant, it did not change the meaning of "posting." 5 Wn.3d at 305. The posting must still be for an "available position," for which the employer "intended to recruit job applicants," to be actionable. *Id.*

ORDER - 7

The Court will permit Moquete to conduct limited discovery to determine which of the 170 putative class members applied to the sales associate position when it was available. This information should be easily ascertainable based on a simple review of GNC's records of applicants and openings at the Tacoma Mall store. Moquete's claims are likely typical of those who applied to the role when it was available.

### 3. Moquete is an adequate representative of the class.

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

District courts in this Circuit are split on whether a plaintiff's strategic splitting of her claim renders her an inadequate class representative. Some courts have concluded that when the plaintiff disavows a cause of action or certain damages, it creates a conflict between her own interests and those of the putative class. *See, e.g., Forsmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 634 (W.D. Wash. 2011); *Sanchez v. Wal Mart Stores, Inc.*, No. 2:06–CV–02573–JAM–KJM, 2009 WL 1514435, at *3 (E.D. Cal. 2009). Other courts, however, have asserted that the opportunity to opt out of the class action under Rule 23(b)(3) mitigates any conflict posed by claim splitting. *Nichols v. GEICO Gen. Ins. Co.*, No. 2:18-cv-01253-RAJ, 2021 WL 1661158, at *8 (W.D. Wash. 2021); *Andren v. Alere, Inc.*, No. 16CV1255-GPC(AGS), 2017 WL 6509550, at *7 (S.D. Cal. 2017).

GNC argues Moquete will not be an adequate class representative because she has chosen to "forgo actual damages for herself and putative class members," which constitutes impermissible claim splitting. Dkt. 27 at 28. It also argues the fact Moquete's counsel is "on 66 other EPOA lawsuits" undermines the claims of "putative class members who were genuine applicants and applied to obtain employment." *Id.* at 29.

Moquete argues she strategically chose to disavow actual damages because they are often difficult to prove. Dkt. 30 at 22–23. She argues class members can "simply opt out" of the action if they want to pursue actual damages. *Id.* She also contends her counsel has "extensive experience" in employment-related class actions like this one and thus would competently and vigorously represent the putative class. Dkt. 30 at 21–22.

The Court is not persuaded that Moquete's counsel's involvement in other EPOA cases "undermines" the class's claims. Instead, the firm's extensive experience and pursuit of similar cases indicates to the Court their ability to "vigorously" represent the other putative class members. *Ellis*, 657 F.3d at 985.

The Court also does not conclude that Moquete's decision to forgo actual damages makes her an inadequate representative. As the Washington Supreme Court recognized in *Branson*, the EPOA provides "statutory damages as a potential remedy" because the state legislature "intended to hold employers accountable regardless of an applicant's ability to show actual damages since proving damages in these situations is difficult." 5 Wn.3d at

ORDER - 9

304–05. A putative class member seeking actual damages can simply and easily choose to opt out of this action. Moquete does not fail the adequacy requirement at this stage.

### 4.      Moquete's proposed class is ascertainable.

In addition to the four express requirements of Rule 23(a), district courts require the party seeking certification to show the class is identifiable and ascertainable. *See, e.g., Lucas v. Breg, Inc.*, 212 F.Supp.3d 950, 972–73 (S.D. Cal. 2016); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012); *Lusby*, 297 F.R.D. at 410; *Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 622 (S.D. Cal. 2015). The class definition must be definite enough to be "administratively feasible for the court to ascertain whether an individual is a member." *Agne*, 286 F.R.D. at 566. Although looking into individual records is not dispositive of ascertainability, if the Court needs to "investigate the merits of individual claims to determine class membership, or if membership depends upon subjective factors," the class is not ascertainable. *Lucas*, 212 F.Supp. at 973.

GNC contends the class is not ascertainable because the proposed class definition merely repeats elements of the EPOA and uses "legal terms that presuppose liability." Dkt. 35 at 10–11. It also contends the proposed class definition would require the Court to make individual determinations on the evergreen job posting and whether the wage and benefits were included on the particular "version of the posting viewed" by each applicant. *Id.* at 22–23.

Moquete disagrees and asserts that limited discovery has already identified 170 applicants for the two positions. Dkt. 30 at 9–10. She argues that the "specific available

position" language in the EPOA is undefined, refers to the "employer's obligations under the statute," and does not limit who can bring an action. *Id.* at 10 (emphasis removed).

The EPOA is limited to applicants who applied for an open, available position. The statute defines a posting as one that is "intended to recruit job applicants for a specific available position." RCW 49.58.110. The plain meaning of the language is clear, and the Court need not read further into its interpretation. *See Nissen v. Pierce Cnty.*, 183 Wn.2d 863, 881 (2015) ("Statutory interpretation starts with the plain meaning of the language; the plain meaning controls if it is unambiguous."). The evergreen nature of the part-time sales associate role raises the question of whether each putative class member applied to a specific available position. With further limited discovery, the parties will be able to identify which putative class members applied to the role when it was open.

Because it would be administratively feasible for the Court to determine class membership, ascertainability is not an issue barring certification at this stage.

**B.      Moquete does not fail Rule 23(b)(3)'s predominance and superiority requirements at this stage.**

Moquete brings this class action under Rule 23(b)(3). Dkt. 9 at 2. A class can be certified under this rule if a court finds both that common questions of law or fact "predominate" over individual questions and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Common questions are defined by the plaintiffs' ability to make a prima facie showing using the same evidence. *Id*. "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id*. (internal quotations omitted); *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("[D]ifferences in damage calculations do not defeat class certification."). However, "[i]f the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance." *Vaquero v. Ashley Furniture Indus.*, Inc., 824 F.3d 1150, 1154 (9th Cir. 2016).

When considering whether common issues predominate, the court should begin with "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). In addition, "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

The superiority requirement focuses on whether a class action is the best method of dispute resolution in the particular case, and "necessarily involves a comparative

evaluation of alternative mechanisms." *Hanlon*, 150 F.3d at 1023. Courts should consider the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

GNC argues Moquete cannot meet Rule 23(b)(3)'s stringent standard for the same reasons she cannot succeed under Rule 23(a). Dkt. 27 at 24–25. It argues liability depends on "individualized questions and defenses for each putative class member" that predominate over any common issues. *Id.* at 27. Additionally, it contends superiority requirement fails because class members can pursue administrative remedies with the Department of Labor & Industries (L&I) and have significant interest in pursuing their own actions individually. *Id.* at 27–28.

Moquete responds that employment actions like this one often present key questions for class certification. Dkt. 30 at 15. She argues the common question of whether GNC's job postings for the two Tacoma Mall positions included the wage and benefits information predominates all other individual issues. *Id.* She argues certifying this class would avoid piecemeal litigation. *Id.* at 20.

Moquete does not fail on Rule 23(b)(3)'s predominance and superiority requirements at this stage. Further discovery on the sales associate applicants leaves open the possibility that class members will have cohesive claims that raise the overarching,

common question of whether GNC failed to include the statutorily required information on the job posting. Moquete's in-person discussion with the JBLM store manager prior to applying for the sales associate position is an individual issue "considerably less significan[t] to the claims" compared to the predominating issue. *Torres*, 835 F.3d at 1134. Finally, the availability of administrative relief does not preclude class members from pursuing a class action. *Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 657 (W.D. Wash. 2011) (the availability of an administrative process does not defeat the superiority requirement). Moquete could reasonably succeed in meeting Rule 23(b)(3)'s standard following further discovery of the putative class's claims regarding the sales associate position.

### III.  ORDER

Moquete does not meet Rule 23's typicality requirement for her claim that GNC failed to comply with the EPOA in its store manager job posting. However, she might have a certifiable class for her claim corresponding to the part-time sales associate position.

GNC's motion to deny class certification, Dkt. 27, is **GRANTED in part** as to the store manager claim, and **DENIED in part without prejudice** as to the sales associate claim.

Dated this 5th day of March, 2026.

BENJAMIN H. SETTLE
United States District Judge